### *Ex parte* AH LIT.

*(District Court, D. Oregon.* February 4, 1886.)

POWER OF THE COUNCIL OF PORTLAND TO PUNISH FOR OPIUM SMOKING.

Subdivision 6 of section 37 of the charter of Portland authorizes the council "to prevent and suppress opium smoking, and houses or places kept therefor, and to punish any keeper of such house or place, or person who smokes therein, or frequents the same. *Held,* that no person can be punished for opium smoking under this authority, unless it is done in a house or place kept for that purpose.

On *Habeas Corpus.*
*Zera Snow*, for petitioner.
*Albert H. Tanner*, for defendant.

DEADY, J. On December 18, 1885, a writ of *habeas corpus* was allowed by me on the petition of Ah Lit, directed to Samuel B. Parrish, chief of police, and returnable in this court, commanding him then and there to produce the body of Ah Lit, together with the cause of his capture and detention. From the return of the writ, it appears that on December 15th the petitioner was tried and convicted, in the police court of Portland, of violating section 27 of the ordinance 3,983, entitled "An ordinance concerning offenses and disorderly conduct," approved October 13, 1883, which reads as follows:

"That any person who shall smoke opium in any house or place, or shall be in any house or place where opium is being smoked, without any lawful business, shall be deemed guilty of a misdemeanor, and, on conviction thereof before the police judge, shall be punished by a fine of not less than ten dollars, nor more than one hundred dollars, or imprisonment in the county jail not exceeding twenty days."

By the complaint on which the petitioner was convicted he was accused of violating said ordinance, "by willfully and unlawfully conducting himself in a disorderly manner, by smoking opium in a certain house or place" therein described, within the limits of Portland; and on conviction thereof was "adjudged to pay a fine of $15 and costs, and be imprisoned　＊　＊　＊　until such fine be paid, not exceeding seven days."

By the charter, as in force when this ordinance was passed, (section 37, subd. 5; Sess. Laws 1882, p. 151,) the council had authority "to suppress bawdy-houses, gaming and gambling houses, places kept for smoking opium, and opium smoking, and to punish the in-

mates of bawdy-houses, houses of ill-fame, keepers of places for smoking opium, and opium smokers." In *Re Lee Tong*, 9 Sawy. 333, S. C. 18 Fed. Rep. 253, this court held that the authority thus given to suppress gaming did not include the power to suppress any game not prohibited by the general law of the state, nor to punish any one for gaming otherwise than as prescribed by such law. Since then section 37 of the charter has been revised and amended (Sess. Laws 1885, p. 408) so as to give the council authority (subdivision 6) to punish the keepers of gaming and bawdy-houses, and persons who frequent the same; and "to prevent and suppress opium smoking, and houses or places kept therefor, and to punish any keeper of such house or place, or person who smokes therein or frequents the same."

Counsel for the petitioner contends that the imprisonment complained of is unlawful and void on several grounds; as that (1) the defendant holds the prisoner without a commitment of any kind; (2) imprisonment cannot be substituted for fine; (3) the prisoner is sentenced to seven days' imprisonment unless the whole amount of the fine is paid; (4) the prisoner is not charged with or convicted of smoking opium, but with disorderly conduct and disturbing the peace; and (5) neither the complaint nor judgment show that the prisoner was charged with or convicted of any offense known to the law.

It is not necessary to consider any of these points but the last one. The power to suppress opium smoking may, if given unqualifiedly, include the power to punish a person for a single act of smoking in his own house. But the power is not unqualifiedly given. The charter does not leave the power to punish persons for opium smoking, as a means of preventing and suppressing the same, to be implied without limitation. It expressly authorizes punishment to be inflicted therefor in certain cases, and therefore impliedly forbids it in all others.

Subdivision 6 of section 37 does not authorize the counsel to punish any one for smoking opium in his own house, or elsewhere than in a house or place kept for that purpose,—what is known, I suppose, in police jargon, as an "opium joint." The power to punish persons, as a means of preventing and suppressing opium smoking, is limited to the punishment of those who keep houses or places for that purpose, and those *who smoke therein*, or frequent the same. This act, though intended in the main to control and restrain the conduct of the Chinese in this particular, must be construed in the same way as if its purpose was to prevent and suppress some practice or habit more generally prevalent; as tobacco smoking and whisky drinking, or the keeping of "joints" or places for such purpose. No one will deny that the abuse, if not the common use, of these two articles in this community is of much greater injury to the health, peace, and morals of society than the present use of opium. But smoking opium is not our vice, and therefore we are more likely

to go to extremes in our desire to suppress it, or to vex those who practice it. Indeed, it is well understood that this legislation, however right in the abstract, is not so much the result of a desire on our part to reform the "Heathen Chinee" as to annoy him. In short, it is the old story of the Puritan and the bear. His opposition to the practice of "baiting" the beast was not because of the pain it gave Bruin, but the pleasure it gave the parties engaged in it. If the language used in subdivision 6, concerning opium smoking, was used in regard to whisky drinking or tobacco smoking, no one would pretend that it authorized the punishment of a person who drank or smoked occasionally or habitually in the privacy of his own or even in his friend's house, and not in a place or "joint" kept for that purpose; and there is no good reason in law or morals why the act should receive any looser or different construction because it applies only to the Chinese dissipation of opium smoking.

In *Re Lee Tong, supra,* this court, in speaking of the rule for ascertaining the powers of a municipal corporation, said:

"Apart from the few faculties considered necessary to its existence,—such as the capacity to sue and be sued, and to have a common seal,—a municipal corporation has no power to do any act except such as are essential to the plain purpose of its creation, or are authorized by the express provisions of its charter, or a clear or necessary implication therefrom."

So far from there being any express provision or necessary implication in subdivision 6 of section 37, authorizing the punishment of any one for smoking opium elsewhere than at a house or place kept for that purpose, the contrary is the case. The express provision giving power to punish the person who smokes in a "joint" excludes any implication of power to punish otherwise from the power to prevent and suppress smoking.

But it is asked in this connection, how is the council to prevent or suppress a practice unless it may directly punish those who engage in it? Admitting that such punishment may be an effective means to that end, it does not follow that the council have or ought to have the power to impose it under any or all circumstances. Evidently the legislature, in passing this act did not think it prudent or desirable that any person in this community should be liable to have the sanctity of his home invaded, and be punished by fine and imprisonment, by privately inhaling the fumes of opium, either as an experiment or a habit. But prevention and suppression may be more or less effected in various ways. Houses or places reasonably suspected of being used for gaming, fornication, or opium smoking may be put under surveillance, and the names of persons frequenting them may be taken down and published. Police officers may be employed for this purpose; and the houses may be opened and searched for evidence to convict the keepers, inmates, and frequenters. But, be this as it may, I am satisfied that the council have no power, under the

statute in question, to punish any one for smoking opium otherwise than in a house or place kept for that purpose.

In this case the prisoner appears at most to have been simply charged with and convicted of smoking opium in a private house. And this, as we have seen, is, under the act, not a crime. He might as well have been charged with smoking tobacco or drinking whisky therein.

But I do not wish to be understood as deciding that the council has not the authority to punish opium or tobacco smoking or whisky drinking on the street, or other public place, as a disorderly or offensive act or conduct. Nothing more is decided than this: Under subdivision 6 of section 37 of the charter, the act or habit of smoking opium cannot be punished, unless it is done in a house or place kept for that purpose. That fact is an essential element of the offense, and must be alleged and proved.

The caption and detention of the prisoner being clearly unlawful, he is deprived of his liberty without due process of law, contrary to the constitution of the United States, and is therefore entitled to be delivered from such restraint by a *habeas corpus* in this court, under section 753 of the Revised Statutes. Let him be discharged.